UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THEODORE LEE LAWTON,

                    Petitioner,

v.                                         CASE NO. 2:10-cv-10048
                                           HONORABLE GEORGE CARAM STEEH
NICK LUDWICK,

                    Respondent.
_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
## GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

This matter has come before the Court on petitioner Theodore Lee Lawton's pro

se amended habeas corpus petition under 28 U.S.C. § 2254.  Petitioner is challenging

his state convictions for armed robbery, Mich. Comp. Laws § 750.529, and possession

of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws §

750.227b.  He alleges that (1) the trial court violated his right to a public trial, (2) the jury

should not have been permitted to see two photographs obtained from his cell phone,

(3) trial counsel was ineffective for failing to challenge the affidavit supporting a search

warrant, (4) a detective suppressed evidence of a recorded telephone conversation

between petitioner and an acquaintance and also destroyed part of the recording, (5)

trial counsel was ineffective for failing to argue that offense variable seven of the

Michigan sentencing guidelines is vague, and (6) appellate counsel was ineffective for

failing to raise habeas claims two through five in the appeal of right.  Respondent Nick

Ludwick urges the Court to deny the petition on grounds that petitioner's claims are procedurally defaulted or meritless. The Court agrees with respondent that petitioner's claims do not warrant habeas relief. Accordingly, the habeas petition will be denied.

## I. BACKGROUND

The charges against petitioner arose from an armed robbery of a convenience store in Cedar Springs, Michigan, on April 22, 2004, shortly before 10:00 p.m. Petitioner's first trial in Kent County Circuit Court ended in a mistrial because the jury was unable to reach a unanimous verdict. Petitioner represented himself at his second trial where the evidence established that:

> [t]wo masked men with guns entered the store, and one fired a single shot that lodged in a cigarette carton near the cash register. They left with $170 in cash. A store customer drove in the direction he believed the robbers went and copied down the license plate number of the only car he came across. It was registered to Suzanne Spicer, who was charged in the offense and testified at trial pursuant to a plea agreement. Spicer testified that she acted as the getaway driver, and that she, [petitioner], and codefendant Joshua Bushey planned the robbery because they needed money. Spicer identified Bushey as the first robber to enter the store and [petitioner] as the second one.
>
> [Petitioner] and Bushey were arrested the following day. They were apprehended after a brief footchase. Two guns, a nine-millimeter and a Derringer, along with a box of nine-millimeter bullets, were found in [petitioner] and Bushey's apartment after the robbery. Spicer testified that [petitioner] carried the nine-millimeter handgun and that Bushey carried the Derringer during the robbery. A shell casing found outside the store's south entrance was determined to have been fired from the nine-millimeter gun that was found in [petitioner] and Bushey's apartment, and a bullet recovered from the store was consistent with having been fired from that gun. Photographs obtained from [petitioner's] cell phone were admitted that depicted the nine-millimeter gun and [petitioner] holding the gun. A coat similar to one worn by one of the robbers was also found in the apartment. It contained both [petitioner's] and Bushey's DNA, with [petitioner] being the minor contributor of the DNA on the collar. Two masks matching the descriptions given by Spicer were found along the road near the store. [Petitioner] and Bushey were excluded as donors of

the DNA found on the mask allegedly worn by the second robber.

> Cell phone records from a phone found on [petitioner] when he was arrested were used to show [petitioner's] whereabouts on the night of the robbery. The locations corresponded with Spicer's account of the evening. A recorded phone call [petitioner] made from jail just after he was arrested was played for the jury. During the call, [petitioner] asked a friend, Lee Blunston, to tell Spicer to leave town so she could not testify against himself and Bushey.

> [Petitioner] denied any involvement in the robbery. He stated that he was at his girlfriend's house at the time of the robbery and only found out about it later from Bushey, who said that he and Spicer had robbed the store. [Petitioner] admitted that he helped Bushey hide the guns, but contended that Spicer set him up by identifying him as one of the robbers.

People v. Lawton, No. 266674, 2007 WL 2141360, at *1 - *2 (Mich. Ct. App. July 26, 2007) (unpublished).

On August 8, 2005, the jury found petitioner guilty, as charged, of armed robbery and felony firearm. On October 12, 2005, the trial court sentenced petitioner as a habitual offender to two years in prison for the felony firearm conviction and to a consecutive sentence of 562 months (forty-six years, ten months) to seventy-five years for the robbery conviction.

On appeal from his convictions, petitioner argued through counsel that the trial court committed reversible error by allowing him to represent himself at trial. In a pro se supplemental brief, petitioner raised twelve claims, including three of his current claims regarding the photographs of a gun, the alleged destruction of evidence, and trial counsel's failure to attack the search warrant. The Michigan Court of Appeals affirmed petitioner's conviction, see id., and on November 29, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Lawton, 480 Mich. 957; 741 N.W.2d 333 (2007).

-3-

Petitioner subsequently filed a motion for relief from judgment.  He alleged, among other things, that trial counsel was ineffective for failing to file a motion to suppress the search warrant and for not arguing that one of the offense variables of the sentencing guidelines was vague, that Detective Elmer Johnson destroyed evidence favorable to his defense, and that appellate counsel was ineffective for failing to raise these issues during the direct appeal.  The state trial court denied the motion without analyzing the issues, see People v. Lawton, No. 04-05016-FH (Kent Cnty. Cir. Ct. May 12, 2008), and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  See People v. Lawton, No. 285705 (Mich. Ct. App. June 30, 2008) (unpublished).  On December 30, 2008, the Michigan Supreme Court denied leave to appeal for the same reason, see People v. Lawton, 482 Mich. 1186; 758 N.W.2d 560 (2008), and on March 23, 2009, the state supreme court denied reconsideration.  See People v. Lawton, 483 Mich. 917; 762 N.W.2d 522 (2009).

On January 6, 2010, petitioner commenced this action.  After respondent Nick Ludwick filed an answer to the petition, petitioner moved to hold his case in abeyance while he exhausted additional state remedies for a new claim based on Presley v. Georgia, 558 U.S. 209 (2010).  On September 30, 2010, the Court granted petitioner's request and closed this case for administrative purposes.  See Order Granting Petitioner's Motion for a Stay, Dkt. #9.

Petitioner then filed a second motion for relief from judgment, claiming that his right to a public trial was violated when the trial court excluded the public from voir dire at his first trial to make room for prospective jurors.  The trial court denied his motion,

-4-

citing Michigan Court Rule 6.502(G)(2), which permits a defendant to file a second or successive motion for relief from judgment only if the motion is based on a retroactive change in the law or a claim of new evidence.  The Michigan Court of Appeals dismissed petitioner's subsequent application for leave to appeal on the basis that a movant may not appeal the denial of a successive motion for relief from judgment.  See People v. Lawton, No. 305111 (Mich. Ct. App. Sept. 13, 2011) (unpublished).  The Michigan Supreme Court denied leave to appeal because petitioner's motion for relief from judgment was prohibited by Rule 6.502(G).  See People v. Lawton, 491 Mich. 908; 810 N.W.2d 573 (2012).

On June 25, 2012, petitioner filed an amended habeas corpus petition, a supporting brief, and a motion to re-open this case.  The Court granted petitioner's motion to re-open this case, see Dkt. #14, and on September 21, 2012, the State filed an answer to the amended petition.  Petitioner filed a reply, and the case is now ready to be adjudicated.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1)    resulted in a decision that was contrary to, or involved an
       unreasonable application of, clearly established Federal law,
       as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).  "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must

also be unreasonable."  Id. at 411.

     "AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court

decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24

(2002) (per curiam)."  Renico v. Lett, 559 U.S. 766, 773 (2010).  "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on his or her claim "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

-6-

fairminded disagreement." Id. at 786-87.

## III.  ANALYSIS

### A.  The Right to a Public Trial (claim one)

Petitioner alleges that the state trial court violated his constitutional right to a
public trial by excluding the public from voir dire during his first trial to make room for
prospective jurors.  Respondent claims that this issue is procedurally defaulted because
petitioner first raised the issue in his second motion for relief from judgment.  To
proceed on a procedurally-defaulted claim, a habeas petitioner "must establish cause
and prejudice for the defaults" and "also show that the claims are meritorious."  Babick
v. Berghuis, 620 F.3d 571, 576 (6th Cir. 2010). The Court "cut[s] to the merits here,"
because a procedural-default analysis "adds nothing but complexity to the case."  Id.

### 1.  Presley v. Georgia

The Sixth Amendment to the United States Constitution guarantees the accused
the right to a public trial in all criminal prosecutions.  U.S. CONST. amend. VI.  This right
is applicable to the States through the Due Process Clause of the Fourteenth
Amendment, and it extends to the jury selection phase of trial and, in particular, to the
voir dire of prospective jurors.  Presley, 558 U.S. at 211-13.

### 2.  Application

Petitioner claims that the state trial court excluded the public from voir dire at his
first trial.  Although the Court has found no reference to this incident in the state-court
record, petitioner contends that the proceedings for that day were not transcribed.  Even
assuming that petitioner accurately recalls the trial court's comment, the first trial ended

in a mistrial. Petitioner was retried a few months later, and the public was not excluded

from his second trial. Any error that occurred at his first trial is moot because the error

was cured at his second trial. <u>See</u> <u>United States v. Borokinni</u>, 748 F.2d 236, 238 (4th

Cir. 1984) (stating that the defendant's second trial cured any errors in the government's

nondisclosure of materials at the first trial, which ended in a hung jury); <u>accord</u> <u>Schnepp</u>

<u>v. Hocker</u>, 429 F.2d 1096, 1099 (9th Cir. 1970) (stating that any burden-of-proof error

on the issue of probable cause at the first trial "was cured by what transpired at the

second trial"); <u>United States v. Valenzuela-Ruiz</u>, No. 93-50567, 1994 WL 561833, at *1

n.3 (9th Cir. Oct. 13,1994) (unpublished decision stating: "[e]rrors that occurred before

[the defendant's] first trial but which were cured before his second trial are moot

because the only remedy for these errors is a new trial, which he already received").

Petitioner nevertheless maintains that, by excluding the public from <u>voir</u> <u>dire</u>

during his first trial, the trial court led people to believe that they could not attend <u>voir</u>

<u>dire</u> during his second trial. The trial court did say in response to petitioner's question at

the beginning of the second trial that its rulings on motions at the first trial carried over

to the second trial. (Trial Tr. Vol. I, 4, Aug. 1, 2005.) But nothing was said about the

court's decision to close the courtroom to the public during <u>voir</u> <u>dire</u> at petitioner's first

trial. Petitioner did not raise the issue or seek clarification, and, after the trial court

stated that its rulings on prior motions still stood, petitioner said that he had no other

questions for the court. As there is no evidence that the trial court prevented the public

from attending any portion of petitioner's second trial, petitioner has no right to habeas

relief on the basis of his first claim.

### B. The Photographs (claim two)

-8-

Petitioner alleges next that his rights to due process and a fair trial were violated when the jury was permitted to see two photographs that the police discovered on his cell phone.  One photograph depicted a handgun.  The other photograph showed petitioner pointing a handgun at the camera.  Petitioner claims that the prosecutor used the photographs as evidence of bad character and that the photographs were too inflammatory and prejudicial to be shown to the jury because there was no direct link between the guns used in the robbery and him.

Petitioner's trial attorney made a pretrial motion to suppress the photographs, but the trial court denied his motion, stating:

> [W]e have here pursuant to a valid search a phone taken off the defendant's person.  The photograph was taken from the phone.  It's clearly of the defendant.  It's clearly of a nine millimeter pistol.  A nine millimeter pistol was used in the robbery here.  The bullet [found at the crime scene] is a nine millimeter bullet.

(Mot. Hr'g 10, Apr. 18, 2005.)  The trial court concluded that the photographs were "clearly admissible" and that the only question would be the weight given to the evidence.  Id.  The Michigan Court of Appeals subsequently determined on direct appeal that the trial court did not err in denying petitioner's motion to suppress the photographs.

Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."  Moreland v. Bradshaw, 699 F.3d 908, 923 (6th Cir. 2012), cert. denied, 134 S. Ct. 110 (2013).  "A federal court may nevertheless grant relief in cases where 'the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation.' "  Id.  (quoting Collier v. Lafler, 419 F. App'x 555, 558 (6th Cir. 2011)).  "[C]ourts 'have defined the category of infractions that violate

"fundamental fairness" very narrowly.' " Wright v. Dallman, 999 F.2d 174, 178 (6th Cir. 1993) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

The photographs in question here depicted a nine-millimeter handgun. Ms. Spicer testified that petitioner owned a nine millimeter gun, that he always carried the gun, and that he had planned to carry and shoot the gun during the robbery. Ms. Spicer also testified that petitioner brought a nine-millimeter gun to the convenience store and, after he retrieved the gun from under the hood of the car, he walked toward the convenience store with it. She heard what sounded like a gunshot and assumed that petitioner had shot the gun. (Trial Tr. Vol. III, 335-36, 363, Aug. 3, 2005; Trial Tr. Vol. IV, 421-22, Aug. 4, 2005.) The photographs corroborated this testimony and countered petitioner's testimony that the guns used in the robbery did not belong to him. (Trial Tr. Vol. V, 698, 791, Aug. 5, 2005.)

Detective Elmer Johnson, moreover, testified that, in his opinion, the gun in the photograph was the gun used in the robbery. (Id. at 631-32, 666.) Given the testimony of Detective Johnson and Ms. Spicer, the photographs were highly relevant evidence because they linked petitioner to the crime. Furthermore, the prosecutor used the photographs for that purpose and not as evidence of bad character.

The Court concludes that permitting the jurors to see photographs of the gun was not so fundamentally unfair as to deprive petitioner of due process. Habeas relief, therefore, is not warranted on the basis of petitioner's second claim.

### C. Trial Counsel (claims three and five)

Petitioner alleges that his trial attorney provided ineffective assistance before trial and at sentencing.

### 1. **Before Trial** (before trial)

Petitioner asserts that his trial attorney should have challenged the affidavit

supporting a search warrant for petitioner's residence.[1]  Petitioner claims that the

affidavit contained obvious falsehoods about his appearance, the suspects' race, and

Ms. Spicer's vehicle.  Petitioner further alleges that the affidavit omitted a description of

Mr. Bushey's clothing and the firearm that Ms. Spicer claimed to have seen inside the

apartment she shared with petitioner and Bushey.  According to petitioner, the omitted

information would have shown that probable cause to issue the warrant was lacking,

and trial counsel should have moved to suppress the fruits of the search under Franks

v. Delaware, 438 U.S. 154 (1978).[2]

The Michigan Court of Appeals rejected petitioner's claim because he chose to

represent himself at trial and could have filed a motion to suppress evidence before his

second trial commenced.  The Court of Appeals also stated that there was no basis for

---

[1]  The police found a nine-millimeter gun, a two-shot Derringer, and some
ammunition when executing the search warrant at petitioner's residence.  (Trial Tr. Vol.
IV, 519-21, Aug. 4, 2005.)

[2]  The Supreme Court held in Franks that,
where the defendant makes a substantial preliminary showing that a false
statement knowingly and intentionally, or with reckless disregard for the
truth, was included by the affiant in the warrant affidavit, and if the
allegedly false statement is necessary to the finding of probable cause,
the Fourth Amendment requires that a hearing be held at the defendant's
request.  In the event that at that hearing the allegation of perjury or
reckless disregard is established by the defendant by a preponderance of
the evidence, and, with the affidavit's false material set to one side, the
affidavit's remaining content is insufficient to establish probable cause, the
search warrant must be voided and the fruits of the search excluded to the
same extent as if probable cause was lacking on the face of the affidavit.

Franks, 438 U.S. at 155-56.

concluding that the affidavit was based on false information or that material information was omitted from the affidavit.  Lawton, 2007 WL 2141360, at *4 n.1.

The record indicates that petitioner voluntarily and knowingly elected to represent himself at trial. (Trial Tr. Vol. I, 3-4, Aug. 1, 2005.)  And, under state law, he could have challenged the affidavit supporting the search warrant at the beginning of his second trial when the trial court addressed preliminary matters and asked petitioner whether he had any questions.  See People v. Carroll, 396 Mich. 408, 412; 240 N.W.2d 722, 724 (1976) (explaining that, although a motion to suppress evidence ordinarily must be made before trial, it may be made at trial in the trial court's discretion).  Because petitioner waived his right to counsel and could have filed a motion to suppress evidence, his ineffective-assistance-of-counsel claim fails.  Wilson v. Parker, 515 F.3d 682, 696 (6th Cir. 2008).  "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' "  Faretta v. California, 422 U.S. 806, 834 n. 46 (1975).

## 2.  At Sentencing (claim five)

Petitioner claims that offense variable seven (OV 7) of the Michigan sentencing guidelines is vague and that his trial attorney was ineffective for failing to make that argument at sentencing.

-12-

### a.  Clearly Established Federal Law

Petitioner was represented by counsel at sentencing.  Consequently, to prevail on his claim, he must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. The "prejudice" prong of the Strickland test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The defendant must demonstrate a substantial probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Richter, 131 S. Ct. at 791-92 (citing Strickland, 466 U.S. at 693).

### b.  Application

OV 7 "is aggravated physical abuse."  Mich. Comp. Laws § 777.37(1).  A score of fifty points is appropriate if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."  Mich. Comp. Laws § 777.37(1)(a).  If no victim was treated that way, the correct score is zero.  Mich. Comp. Laws § 777.37(1)(b).

Petitioner's trial attorney objected to the fifty-point score for OV 7 on the basis that there was no evidence of excessive brutality, sadism, or torture.  The trial court, however, opined that petitioner and Mr. Bushey engaged in conduct designed to substantially increase the victims' fear and anxiety.  The court pointed out that both men were armed, that a firearm was discharged, and that the firearm was pointed at the

victims and a baby.  The court opined that this behavior was over and above what was

needed to commit an armed robbery and, therefore, the score for OV 7 would remain at

fifty points.  (Sentencing Tr., 8, Oct. 12, 2005.)

Petitioner claims that the phrase "conduct designed to substantially increase the

fear and anxiety a victim suffered" is vague and that his conduct could not have

increased the victims' fear and anxiety because he did not fire the gun at anyone and

because the victims did not realize that a gun had been fired.  (Trial Tr. Vol. II, 213, 230,

Aug. 2, 2005.)  Nevertheless, because "there is no constitutional right to sentencing

guidelines, the limitations placed on judges' discretion by [sentencing guidelines] do not

violate a defendant's right to due process by reason of vagueness."  United States v.

Smith, 73 F.3d 1414, 1418 (6th Cir. 1996) (quoting United States v. Salas, No. 93-5897,

1994 WL 24982, at *2 (6th Cir. Jan. 27, 1994) (unpublished decision citing United

States v. Wivell, 893 F.2d 156, 159-60 (8th Cir. 1990)).

Even if sentencing guidelines were susceptible to a vagueness attack, a statute

is considered void for vagueness only if it "fails to provide a person of ordinary

intelligence fair notice of what is prohibited, or is so standardless that it authorizes or

encourages seriously discriminatory enforcement."  United States v. Williams, 553 U.S.

285, 304 (2008).  The phrase "conduct designed to substantially increase the fear and

anxiety a victim suffered during the offense" is not so vague as to prevent a person of

ordinary intelligence from knowing what is prohibited.  Nor is it so standardless that it

authorizes or encourages discriminatory enforcement.  A person of ordinary intelligence

could conclude, as the state trial court did, that a score of fifty points for OV 7 is

warranted when the defendant's conduct went beyond what was needed to commit the

charged offense and the defendant apparently "intended to make a victim's fear or anxiety greater by a considerable amount." People v. Hardy, 494 Mich. 430, 444; 835 N.W.2d 340, 347 (2013).  Petitioner's trial attorney therefore was not ineffective for failing to object to the scoring of OV 7 on the basis of vagueness.

To the extent petitioner is challenging the trial court's scoring of OV 7 on due process grounds, his claim lacks merit because the evidence at trial established that he fired a gun shortly after he entered the convenience store.  Although the bullet entered a display case, a woman and two young children were nearby, and petitioner's conduct went beyond simply putting the victims in fear by representing that he had a weapon. By firing the gun, he demonstrated that he was willing and capable of shooting anyone who attempted to interfere with him and Mr. Bushey.

One woman in the store got on the floor and covered her infant daughter with her body after she heard the gunshot and saw the armed men.  (Trial Tr. Vol. II, 230-31, Aug. 2, 2005.)  And Ms. Spicer testified that, after the robbery both petitioner and Mr. Bushey felt badly because of the way the woman was crying about her baby. (Trial Tr. Vol. III, 343, Aug. 3, 2005.)  These facts are indications that petitioner's conduct went beyond what was necessary to commit the armed robbery and that he increased the victim's fear and anxiety by a considerable amount.  The trial court therefore did not violate petitioner's constitutional right to due process by scoring fifty points for OV 7.

### D.  The Recorded Telephone Conversation (claim four)

Petitioner contends that Detective Elmer Johnson destroyed portions of a recorded telephone call that Petitioner made to Lee Blunston from jail shortly after his arrest.  During their conversation, petitioner asked Mr. Blunston to contact Ms. Spicer

-15-

and tell her to leave town so that she would not testify against him and Mr. Bushey. According to petitioner, the destroyed portions of the conversation were favorable to the defense, because they indicated that he told Blunston he was  "locked up on some bullshit" and that Mr. Bushey did something stupid and had "got him [petitioner] caught in the middle of it."  Petitioner further alleges that Detective Johnson withheld information about the recording for nearly six months.

Petitioner did not object at trial when the prosecutor played the recording of his telephone call to Blunston from jail.  (Trial Tr. Vol. IV, 490, Aug. 4, 2005.)  And when the prosecutor moved to admit the recording in evidence, petitioner stated that he had no objection.  (Id. at 493-94.)  Consequently, when petitioner raised his claim on direct appeal, the Michigan Court of Appeals stated that petitioner's "affirmative approval of this evidence extinguished any error" and that "there [was] no error to review." Lawton, 2007 WL 2141360, at *4.

"Where a state court denies a claim as waived, the claim is procedurally defaulted and the federal court may not review the claim absent a showing of cause and prejudice . . . ." Phillips v. Houk, __ F. App'x __, __, No. 12-3884, 2014 WL 5137586, at *3 (6th Cir. Oct. 14, 2014).  But "a procedural default . . . is not a jurisdictional matter," Trest v. Cain, 522 U.S. 87, 89 (1997), and the Court has determined for the following reasons that petitioner's claim lacks merit regardless of whether it is procedurally defaulted.

### 1.  Alleged Suppression of Evidence

Petitioner alleges first that Detective Johnson suppressed evidence of his telephone call to Lee Blunston from jail. Under Brady v. Maryland, 373 U.S. 83, 87

(1963), "a defendant's rights under the Due Process Clause are violated when a state

suppresses material exculpatory information." Cauthern v. Colson, 736 F.3d 465, 481

(6th Cir. 2013). "[T]he elements of a Brady claim are: 'The evidence at issue must be

favorable to the accused, either because it is exculpatory, or because it is impeaching;

that evidence must have been suppressed by the State, either willfully or inadvertently;

and prejudice must have ensued.' " Id. (quoting Strickler v. Green, 527 U.S. 263,

281–82 (1999)).   The Sixth Circuit has

> held that "[i]n general, the principles announced in Brady do not apply to a
> tardy disclosure of exculpatory information, but to a complete failure to
> disclose.  If previously undisclosed evidence is disclosed . . . during trial,
> no Brady violation occurs unless the defendant has been prejudiced by
> the delay in disclosure." United States v. Word, 806 F.2d 658, 665 (6th
> Cir. 1986) (internal citation omitted).

Robertson v. Lucas, 753 F.3d 606, 621 (6th Cir. 2014).

Detective Johnson testified in petitioner's first trial that he thought something was

missing from the recorded telephone conversation between petitioner and Mr. Blunston.

(Trial Tr. Vol. IV, 417-19, Apr. 26, 2005.)  It is obvious from this testimony that petitioner

knew about the recording and its incompleteness a few months before his second trial.

And he was able to make effective use of the information at the second trial by claiming

during his opening statement that the recorded conversation was not the entire phone

call and that the recorded part was the only part which helped the prosecution's case.

(Trial Tr. Vol. II, 203, Aug. 2, 2005.)  He later elicited Mr. Blunston's testimony that,

during their telephone conversation, he had said Mr. Bushey did something stupid and

caught petitioner up in the middle of it.  (Trial Tr. Vol. IV, 494, Aug. 4, 2005.)  Blunston

testified that he had understood petitioner's comment to mean that Mr. Bushey had got

-17-

petitioner "into some bullshit," that petitioner "didn't do it [him]self," and that "somebody else [got him] into it." (Id. at 497.)

There was no Brady violation because information about the recording was merely delayed, not suppressed, and because petitioner was able to make effective use of the information despite the delayed disclosure.

### 2. Alleged Destruction of Evidence

Petitioner alleges that Detective Johnson not only delayed disclosure of petitioner's recorded conversation with Mr. Blunston, but also tampered with the recording by destroying the portions of it that were favorable to the defense. Detective Johnson, however, testified that only the inmate's name and the brief introduction which normally precede an inmate's telephone call from jail were missing. He claimed that he had no idea why this happened and that he had copied onto a disk everything that was audible on the recording. (Trial Tr. Vol. V, 622-24, 657, Aug. 5, 2005.) He seemed to think that the problem was with the outdated or defective equipment which was in use at the time. He repeatedly denied editing the recording or omitting portions of it, stating that he had enough information without editing it. (Id. at 623, 637-39, 643, 657, 663.) Detective Johnson's testimony was corroborated by Mr. Blunston, who testified that he thought only the beginning of the phone call with the initial "hello" and introduction had not been recorded. (Trial Tr. Vol. IV, 490, Aug. 4, 2005.)

Petitioner has failed to show that Detective Johnson destroyed a portion of the taped recording. Habeas relief, therefore, is not warranted on petitioner's claim about the recording.

### E. Appellate Counsel (claim six)

-18-

The sixth and final habeas claim alleges that petitioner's appellate counsel was ineffective for failing to raise habeas issues two through five in the appeal of right. Petitioner first raised this claim in his first motion for relief from judgment and in the subsequent appeals.  The state trial court denied the motion without giving any reason for its decision, and both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal in brief orders stating that petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  Because no state court adjudicated petitioner's claim on the merits, this Court's review of petitioner's claim "receive[s] the pre-AEDPA standard of review: de novo for questions of law (including mixed questions of law and fact), and clear error for questions of fact."  Robinson v. Howes, 663 F.3d 819, 823 (6th Cir. 2011).

Under federal law, an appellate attorney's failure "to raise an issue on appeal can amount to constitutionally ineffective assistance."  Jalowiec v. Bradshaw, 657 F.3d 293, 321 (6th Cir. 2011).  But an attorney is not required to raise every non-frivolous claim requested by the client on appeal if counsel decides not to raise the claim as a matter of professional judgment.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  To demonstrate that appellate counsel was ineffective, a habeas petitioner must show that (1) his attorney unreasonably failed to discover and raise nonfrivolous issues on appeal and (2) a reasonable probability exists that he would have prevailed on appeal were it not for his appellate attorney's failure to raise the issues.  Smith v. Robbins,  528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687-91, 694).

Petitioner's claims about his trial attorney, the photographs on his cell phone, and his telephone conversation with Mr. Blunston lack merit for the reasons given above.

The Court's inquiry, therefore, is at an end.  "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  Shaneburger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010) (quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).  The Court therefore declines to grant relief on petitioner's claim about appellate counsel.

## IV.  CONCLUSION

The state-court rulings in this case were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  Accordingly, the amended habeas corpus petition (Dkt. #12) is **DENIED**.

## V.  REGARDING A CERTIFICATE OF APPEALABILITY AND THE APPELLATE FILING FEE

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.

Reasonable jurists would not find the Court's assessment of petitioner's constitutional claims debatable or wrong, nor conclude that the issues are adequate to

-20-

deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Nevertheless, if petitioner chooses to appeal this decision, he may proceed in forma pauperis on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

Dated:  January 28, 2015

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 28, 2015, by electronic and/or ordinary mail and also on Theodore Lee Lawton #254897, Ionia Correctional Facility, 1576 W. Bluewater Hwy. Ionia, MI  48846.

s/Barbara Radke
Deputy Clerk

---